**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**JOHN BROWN**                                                                                                 **PLAINTIFF**

**VS.**                            **CASE NO. 3:15CV00028 PSH**

**CAROLYN W. COLVIN, Acting Commissioner,
    Social Security Administration**                                **DEFENDANT**

**ORDER**

Plaintiff John Brown ("Brown") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Colvin") to deny his claim for Disability Insurance Benefits ("DIB"). Brown was awarded DIB benefits in March of 2007 due to skin lesions. On December 2, 2011, the state disability determination service found Brown had experienced medical improvement and his disability had ceased. A state agency disability hearing officer affirmed the determination[1]. Brown then requested and received a hearing before an Administrative Law Judge ("ALJ"). The hearing was conducted on July 24, 2013, and the ALJ's decision affirming the cessation of benefits came on October 4, 2013. Brown contends the ALJ's decision is not supported by substantial evidence because: (1) the medical evidence shows he still has skin lesions; and (2) the record shows he is unable to perform the full range of medium work. The parties ably summarized the medical records and the testimony given at the administrative hearing. (Tr. 23-33).

---

[1] The state agency disability hearing officer specifically found Brown continued to have a residual skin disease and that he should "avoid environments that contain excessive wetness, humidity, and heat." (Tr. 76).

1

The Court has carefully reviewed the record to determine whether there is substantial evidence to support Colvin's decision. 42 U.S.C. § 405(g).

An initial review of the medical records is helpful. In July of 2006 Brown was examined by Dr. Kaplan, a dermatologist, after Brown was exposed to smoke from barrels that contained the weed and grass killing product Roundup. Brown was subsequently seen by Dr. Kaplan in September 2006 and was also treated by a dermatologist at the University of Tennessee. Brown filed his application for DIB on October 19, 2006, and the state disability determination agency sent Brown to Dr. Kaplan in February 2007 for a consultative examination. Dr. Kaplan diagnosed pemphigus[2], and noted this to be a chronic condition with no cure. Dr. Kaplan wrote "it would be extremely difficult for him to carry on normal daily activities or to maintain any employment." (Tr. 218). On May 18, 2007, the state disability determination agency found Brown was disabled beginning on May 19, 2006. (Tr. 35).

On June 25, 2010, Brown was seen at the emergency room of Methodist Hospital in Memphis for an abscess on his right arm. The treating physician noted the abscess had been present one week, pain was moderate, and exertion exacerbated the problem. (Tr. 231). Brown was discharged with directions for cleaning the affected area at least twice daily, and prescribed Bactrim, Doxycycline, and Ultram. (Tr. 232).

Brown was again seen by Dr. Kaplan in November of 2011. In pertinent part, Dr. Kaplan again noted that pemphigus is a chronic condition and its "course is often unpredictable." (Tr. 248). Dr. Kaplan found Brown's problem "has been under relatively good control within the past year"

---

[2] The Mayo Clinic describes pemphigus as a group of rare skin disorders causing blisters of the skin or mucous membranes. Pemphigus is a chronic condition, with treatment which may include medications or treatments similar to those used for severe burns. See www.mayoclinic.org.

and that Brown had not had "severe flares" within the past few years. (Tr. 248).

Five days after Brown saw Dr. Kaplan, Dr. David Hicks, a nonexamining state agency physician, executed a Physical Residual Functional Capacity Assessment. Dr. Hicks reviewed Dr. Kaplan's notes from February 2007 and November 2011, concluding Brown demonstrated medical improvement and finding Brown had the residual functional capacity ("RFC") to perform light work with environmental limitations for avoidance of even moderate exposure to extreme heat, humidity and wetness. (Tr. 256).

On December 2, 2011, the state disability determination agency terminated Brown's disability.

On December 13, 2011, Brown saw Dr. Askari, an internist, for itching and recurring bumps on his body. Brown reported a history of recurrent boils, and of itching, especially in winter months. Brown also indicated the bumps are more sensitive and painful when he gets hot. Dr. Askari's physical examination noted no rashes or suspicious lesions, and he counseled Brown on hygiene and use of a moisturizing cream. (Tr. 258-260). Brown returned to Dr. Askari on February 28, 2012, with left arm pain and burn sores. Dr. Askari's physical examination on this occasion was positive for a rash on Brown's leg and for pain in his left shoulder. Dr. Askari prescribed medication for skin abnormalities and for left shoulder pain. (Tr. 261-263).

On May 26, 2012, nonexamining state agency physician Takach "affirmed as written" the earlier findings of Dr. David Hicks. (Tr. 278). Brown then requested a hearing before the ALJ.

On August 16, 2012, Brown was seen by Dr. Samuel Meredith, who diagnosed an orthopedic disorder in Brown's left shoulder and referred him for physical therapy. (Tr. 279). Brown received physical therapy from August 20 through September 25, 2012. His therapist indicated Brown "made

progress with his treatment program." (Tr. 280).

Brown's administrative hearing was conducted on July 24, 2013, and the ALJ's opinion affirming the cessation of benefits was issued on October 4, 2013.

Turning to the arguments advanced by Brown, we find merit in his second claim for relief – the ALJ's finding that he could perform the full range of medium work is not supported by the record.

In arriving at her RFC determination of the full range of medium work, the ALJ acknowledged the administrative hearing testimony of Brown and his sister, and noted the Pain Questionnaire executed by Brown and the Function Report executed by another of Brown's sisters. The ALJ discounted Brown's statements "to the extent they are inconsistent" with an RFC to perform the full range of medium work. (Tr. 12). This is a dramatic discounting of credibility. For example, Brown testified to continuing problems with skin lesions, worsening when he is exposed to sunlight. Brown's sister Maria testified of his need to avoid exposure to sunlight and chemicals. Brown also indicated he dealt with chronic pain and with left shoulder pain which limited his ability to lift.

Even if we were to generously assume the ALJ correctly analyzed Brown's credibility, the RFC finding is not supported by the medical records. The RFC need not mirror the findings of any one physician, as the ALJ is not bound to choose any one physician and adopt his/her findings as the appropriate RFC. Instead, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Within this RFC framework where the ALJ is to consider all relevant evidence, not

all of the evidence is of equal value. For example, a treating physician's medical opinions are given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with the other substantial evidence. *See Choate v. Barnhart*, 457 F.3d 865, 869 (8th Cir. 2006) (internal quotations omitted). The ALJ may discount or even disregard a treating physician's opinions if "other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of his opinion." *See Id.* (internal quotations omitted).

Here, treating physician Kaplan described Brown's condition as chronic and often unpredictable. Although Dr. Kaplan notes Brown had avoided severe flare-ups in recent times, he also states that small lesions continue to develop. Dr. Kaplan's records cannot be interpreted to support the notion that Brown can perform the full range of medium work. No treating physician opined Brown could perform medium work. The ALJ cites the nonexamining state agency physicians[3] to support the RFC finding. However, even these sources do not endorse a medium RFC for Brown. Dr. Hicks found Brown could perform light work with environmental limitations[4]. The ALJ erred in relying heavily upon the state agency physicians, and erred again in fixing Brown's RFC at a level beyond the findings of any physician in the record. There is not substantial evidence

---

[3] It is well-settled that nonexamining sources are generally given less weight than those of examining sources. (Tr. 17). This is especially true when, as here, the nonexamining sources provide their opinions in a checklist format. (Tr. 427-434, 468-470). *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011).

[4] The presence of environmental limitations suggests Brown suffers from nonexertional impairments, which may necessitate the use of expert testimony from a vocational expert rather than the ALJ's reliance upon the Medical-Vocational Guidelines. *See, e.g., Brock v. Astrue*, 674 F.3d 1062 (8th Cir. 2012).

to support the RFC conclusion.

Based upon the foregoing, this case must be remanded for further proceedings. On remand, the ALJ is directed to perform a new RFC analysis and continue with the sequential evaluation. The ALJ may find it beneficial to obtain additional medical evidence from an examining physician regarding Brown's capability to perform work at specific levels, the outlook for Brown's pemphigus, and Brown's need for specific environmental limitations, assuming he can perform work at some level.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is reversed and remanded. This remand is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED this 29th day of October, 2015.

_____
UNITED STATES MAGISTRATE JUDGE